FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

**FILED**

U.S. CLERK'S OFFICE
DISTRICT COURT, E.D.N.Y.

★ JUN 02 2004 ★

BROOKLYN OFFICE

In the United Stated District Court
For the Eastern, District of New York

LAWRENCE HAYES

_____

_____

_____

_____

NYSIS #:_____
(optional)

**CV 04 2342**

[Enter above the full name of
the plaintiff(s) in this action.]

v.

NEW YORK STATE DIVISION OF PAROLE

PAROLE OFFICER, MS. LISA BROWN

PAROLE OFFICER, MR. BROWN
SR. PAROLE OFFICE, JANE DOE

PAROLE OFFICER, JOHN DOE
PAROLE OFFICER JANE DOE

ROSS, J.

BLOOM, M.J.

**RECEIVED**

JUN 02 2004

PRO SE OFFICE

Kindly list all defendants to this lawsuit and the address at which each may be served. If you do not provide an address for a defendant, that defendant will not be served.

CHAIRMAN, NYS Board of Parole
97 Central Avenue
Albany, NY 12226

Defendant No. 1

Parole Officer Lisa Brown, INDIVIDUALLY
340 Livingston Street
Brooklyn, NY

Defendant No. 2

P.O. Mr. Brown
340 Livingston Street
Brooklyn, NY

Defendant No. 3

Sr. Parole Officer Jane Doe #1 INDIVIDUALLY
340 Livingston Street
Brooklyn, NY

Defendant No. 4

P.O. Jane Doe #2
340 Livingston Street
Brooklyn, NY

Defendant No. 5

P.O. John Doe #2
340 Livingston Street
Brooklyn NY

Please attach additional 8 1/2 x 11 paper if necessary.

2

**FORM TO BE USED BY A PRISONER FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------x

Laurence Hayes

Full name of plaintiff/prisoner ID#

           Plaintiff,                      TRIAL BY JURY DEMAND
                                           YES X NO ___

    -against-
NYS Division of Parole
P.O. Lisa Browns (Ms)
P.O. Mr. Browns
S.P.O. Jane Doe; Mr. ? Ms, Jane Doe & Mr. John Poe
Enter full names of all defendants

           Defendants.

-----------------------------------------------x

I.    Previous Lawsuits:

    A.    Have you begun other lawsuits in state or federal court
           dealing with the same facts involved in this action or
           otherwise relating to your imprisonment? Yes ( ) No (X)

    B.    If your answer to A is yes, describe the lawsuit in the space below
           (If there is more than one lawsuit, describe the additional lawsuits
           on another piece of paper, using the same outline.)

        1. Parties to this previous lawsuit:

           Plaintiffs:    N/A

           Defendants:    N/A

        2. Court (if federal court, name the district;
           if state court, name the county)    N/A

        3. Docket Number:    N/A

4. Name of Judge to whom case was assigned: _____N/A_____

5. Disposition: (for example: Was the case dismissed? Was it appealed? Is it still pending?) ____N/A____

6. Approximate date of filing lawsuit: _____N/A_____

7. Approximate date of disposition: _____N/A_____

II. Place of Present Confinement: Rikers Island (OBCC)

A. Is there a prisoner grievance procedure in this institution? Yes ( ) No ( ) N/A

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure? Yes ( ) No ( ) N/A

C. If you answer is YES;

1. What steps did you take? _____N/A_____

2. What was the result? _____

D. If you answer is NO, explain why not _____N/A_____

E. If there is no prison grievance procedure in the institution, did you complaint to prison authorities? Yes ( ) No (X)

F. If you answer is YES,

1. What steps did you take? _____N/A_____

2. What was the result? _____N/A_____

III. Parties

(In item A below, place your name in the first blank and place our present address in the second blank. Do the same for additional plaintiffs, if any.)

4

A. Name of plaintiff Lawrence Hayes #1410405885

Address OBCC, 16000 HAZEN ST, EAST ELMHURST, NY 11370
or 2525 Linden Blvd. # 5B, Bklyn, NY 11208

(In item B below, place the full name of the defendants in
the first bland, his official position in the second blank, and
his place of employment in the third blank. Use Item C for
the names, positions, and places of employment of any
additional defendants.)

NYS

B. Defendant * OF NYS Div. of Parole is employed as Parole Officers
at 340 LIVINGSTON STEET

C. Additional Defendants (1) Ms. P.O. Lisa Brown, (2)
Mr. P.O. Brown, (3) Sr. P.O. JANE DOE ; P.O. Ms.
Jane Doe #2; Mr. P.O. John Doe #2

* CHAIRMAN - NYS Board of Parole - 97 Central
AVENUE - ALBANY, NY 12226

IV. Statement of Claim

(State here, as briefly as possible, the facts of your case.
Describe how each defendant is involved. Include also, the
names of other persons involved, dates and places. Do not
give any legal arguments or cite any cases or statutes. If
you intend to allege a number of related claims, number and
set forth each claim in a separate paragraph. Use as much
space as you need. Attach additional 8 1/2 x 11 sheets, if
necessary.)

Pg. 1

POINT #ONE: PAROLE HAD A DUTY TO OBTAIN MEDICAL OPINION

Plaintiff has been on Parole, NYS Division Of Parole, for the past
approx. 13 years. In that time Plaintiff has not had any serious
contact with the law or committed any criminal offices. The original
offense Plaintiff was convicted, sentensed and released to parole
supervision in 1971, approx. 33 years ago.

1. On April 7th, 2004, several members of the NYS Division of parole
did arrest and remove me from my home. At the time of the arrest I
was under Doctor Supervision, under the influence of a strong codeine
bsaed, sedative, medication and, because of the manner I was being
"handled, experiencing a greatdeal of pain."

5

HAES V. NYS DIVISION OF PAROLE

PG. 2,   STATEMENT OF CLAIM, CONT.   #1: PAROLE AUTHORITIES HAD A DUTY
TO OBTAIN MEDICAL OPINION OR ADVICE.

2.   That I was hd cuffed, behind my back and placed in the back
seat of a car.   That I explained my condition to the Parole Officers
and complained, so much, that they offered me the option of (1) re-
maining with them - while they went fromh house to house, looking
for other parole violators - or be dropped off at  local Police
Priecent.  1 selected being dropped off at the priecent, though I made
    it clear I needed medical attention.   I was taken to what I believe
to be the 79th Priecent in East New York, Brooklyn.

3.   While in a holding cell, I began to experience repeated sharp
pulsating pains, in my neck, head and back.   The pain was so great
that I was compelled to yell out.   The police officer, I believe to be
the duty officer, came to the back and inquired , I informed him of
my medical condition (history) and current parole circumsatne.   He
immediately called the parole authorities, instructed them to come
get me out of their priecent and, further, instructed, recommended or
suggested they take me to a hospital.

4.   Parole authorities returned to the priecent, re-hand cuffed
me and took me out  to their car.   While setting in the back seat
the (I assume) Supervising Parole Officer, told the others, "I am
not taking him to a hospital, we can take him to Riker's Island or...
Where is Bush? (Referring to my Parole Officer).   She was informed
that he was downtown.   She, the SPO, instructed Ms. Parole Officer
Brown (Mr. P.O. Bush partner), to contact him and tell him to meet
them at the Brooklyn Criminal Court Building, in Downtown Brookly.

HAYES V. NYS DIVISION OF PAROLE

PG. 3, STATEMENT OF CLAIM   #1: PAROLE AUTHORITIES HAD A DUTY TO OBTAIN MEDICAL OPINION OR ADVICE.

5.   From the priecent, I was taken to the Brooklyn Criminal Court Building, where Mr. Bush came to thearea, gave the Violation Notice Papers to his partner, Ms. P.O. Lisa Brown.  Who then gave them to me.  I HAVE NOT SEEN OR BEEN ABLE TO RESUME MY MEDICAL TREATMENTS SENSE THAT DAY.  I BELIEVE IT WAS A MATTER OF DUTY FOR THE PAROLE AUTHORITIES TO TAKE ME TO A HOSPITAL, HAVE ME CHECKED OUT AND TO OBTAIN A PROFESSIONAL MEDICAL OPINION AS TO WHETHER IT WAS SAFE FOR ME TO BE MOVED AROUND.

6.   THE CAUSE OF MY MEDICAL CONDITION, ARE AS FOLLWS:

ON FEBURARY 7, 2004, I WAS IN A CAR ACCIDENT THAT RESULTED IN MY BECOMING DISABLED (SEE PLAINTIFF EXHIBITS #1-HEDRYCH, M.D., LETTER; #2 GUCCIONE, ESQ., LETTER: #3-COMPREHENSIVE INITIAL EVALUATION; AND #4-RADIOLOGY REPORT).

7.   SINCE THAT TIME, I HAVE BEEN LOSING NERVE CONTROL IN MY LEFT EYE, EXPERIENCING PERIODS OF DIZZINESS AND PAIN.  I HAVE NOT BEEN ABLE TO SLEEP A NIGHT'S SOUND SLEEP AND WORRY CONSTANTLY ABOUT THE LONG TERM EFFECTS OF MY MEDICAL CONDITION.  I HAVE BROUGH ALL THE FACTS TO THE ATTENTION OF MEDICAL PERSONNEL AT RIKER'S ISLAND, BUT HAVE NOT RECEIVED ANYTHING NEAR THE COMPREHENSIVE TREATMENT I WAS RECEIVING FROM MY DOCTOR.

HAYES V. NYS DIVISION OF PAROLE

PG. #4

POINT #2:   I DID NOT, CONSIDERING MY PHYSICAL, MENTAL AND EMOTIONAL
STATE (OVER ALL MEDICAL CONDITION) INTELLIGENTLY AND
VOLUNTARILY WAIVE MY CONSTITUTUIONAL DUE PROCESS RIGHTS
AND ENTITLEMENT TO A PRELIMINARY HEARING.

WHILE BEING TRANSPORTED DOWNTOWN TO MEET UP WITH MR. P.O.BUSH,
MS. P.O. BROWN,(P.O. BUSH'S PARTNER) SUGGESTED THAT I WAIVE MY PRE-
LIMINARY PAROLE HEARING, SAYING "BECAUSE I HAD A LEGIT MEDICAL CON-
DITION AND EXCUSE, I WOULD BE IMMEDIATELY RELEASED."

"IT CAME DOWN TO WHETHER I WANTED TO WAIT SEVEN (7) DAYS (IF
I SELECTED TO WAIVE MY PRELIMINARY HEARING) OR FOURTEEN DAYS (14)
(IF I DECIDED TO HAVE MY PRELIMINARY HEARING). AT FIRST, I AGREED
TO WAIVE MY PRELIMINARY HEARING ( I WAS IN PAIN AND WANTED TO GET
BACK TO TREATMENT AND MY LIFE, AS AS SOON AS POSSIBLE, I REMEMBER
FEELING AND THINKING). HOWEVER, ANOTHER P.O. RIDING IN THE CAR,
MR. P.O. BROWN, CONVINCED ME TO NOT WAIVE MY PRELIMINARY. THE LAST
THING I REMEMBER, BEFORE BEING OVER COME BY PAIN, WAS P.O. MR. BROWN,
TELLING MS. P.O. BROWN, THAT "I HAD CHANGED MY MIND AND WANTED TO
HAVE MY PRELIMINARY HEARING."

IT WAS NOT UNTIL I WAS ON RIKER'S ISLAND, THAT I BECAME CONSCIOUS
OF THE FACT THAT MS. P.O. BROWN, DID NOT CHANGE THE PAPERS TO REFLECT
THAT I WANTED TO HAVE MY CONSTITUTIONALLY GRANTED RIGHT TO HAVE A
PRELIMINARY HEARING, (SEE PLAINTIFF EXHIBIT #7. VIOLATION OF RELEASE
REPORT & EXHIBIT A NOTICE OF VIOLATION.

I CONTACTED THE LEGAL AID SOCIETY PARA_PROFESSIONAL AT RIKER'S
ISLAND AND BROUGHT MY "VAIVER OF PRELIMINARY HEARING" ISSUE TO HER
ATTENTION. SHE INSTRUCTED ME TO WAIT UNTIL MY FINAL HEARING, APRIL
19th, 2004, AND BRING IT TO THE ATTENTION OF THE ADMINISTRATIVE LAW
JUDGE (ALJ). I BROUGHT THE ISSUE UP ON THE 19TH OF APRIL, THE 5TH OF
MAY AND THE 12TH OF MAY, ALL THREE TIME I WAS EITHER IGNORED OR TOLD
IT WAS TOO LATE TO DO ANYTHING ABOUT IT.

HAYES V. NYS DIVISION OF PAROLE

PG. #5

## R E L I E F

COMPENSATORY DAMAGES: TO BE DETERMINED ONCE COUNCIL HAS BEEN
ASSIGNED AND ASSESSMENT OF DISABILITY INSURANCE, WORKMEN'S COM-
PENSATION AND OTHER INCOME ARE MADE. HOWEVER, THE CURRENT AMOUNT
SHALL BE LISTED AS $400,000.00.

PUNITIVE DAMAGES: PLAINTIFF IS SEEKING FIVE MILLION IN PUNITIVE
DAMAGES, FROM THE NYS DIVISION OF PAROLE, BECAUSE IT IS RESPONSIBLE
FOR THE TRAINING OF ITS IMPLOYEES, WHO IN THIS CASE SHOWED RECKLESS
AND CALLOUS INDIFFERENCE, AND NEGLECT FOR PLAINTIFF'S MENTAL, PHYSICAL
AND EMOTIONAL MEDICAL NEEDS AND CONDITION.

 PLAINTIFF IS SEEKING $100,000.00 (ONE HUNDARD
THOUSAND)FROM EACH EMPLOYEE OF THE NYS DIVISION OF PAROLE, INDIVIDUALLY,
FOR THEIR DISREGARD FOR PLAINTIFF'S MEDICAL NEEDS AND ANY PHYSICAL
HARM THAT HAS RESULTED AS A RESULT OF SAID DISREGARD - AND FURTHERMORE,
FOR THE MENTAL, EMOTIONAL, PHYSICAL AND SPIRITUAL PAIN AND SUFFERING
PLAINTIFF HAS, DID, AND CONTINUE TO TO EXPERIENCE.

INJUNCTIVE RELIEF: PLAINTIFF IS SEEKING THE IMMEDIATE RESUMPTION OF
PLAINTIFF'S MEDICAL TREATMENT, (SEE, PLAINTIFF'S EXHIBIT #3 (pg 3)-
COMPREHENSIVE INITIAL EVALUATION 'PLAN'), UNDER THE DIRECTION AND
SUPERVISION OF PLAINTIFF'S DOCTOR, GEDEON HEDRYCH, M.D., PARK AVENUE
TRAUMA, 100 LIVINGSTON STREET, BROOKLYN, NY 11201. AND, THAT THE NYS
OF PAROLE, BE MADE TO PAY ALL THE COST ASSOCIATED THEREWITH.

 PLAINTIFF WISHES, THE COURT TO KNOW THAT HE HAS NOT

HAYES V. NYS DIVISION OF PAROLE

PG. #6

R E L I E F: CONT.

BEEN RECEIVING ANY DIRECT TREATMENT FOR HIS KNOWN AND UNKNOWN INJURIES.
THAT HE HAS BROUGHT HIS MEDICAL CONDITION AND REPORTS TO THE ATTENTION
OF THE NYC DEPARTMENT OF CORRECTIONS, BUT HAS YET TO RECEIVE ANYWHERE
NEAR THE TREATMENT HE WAS RECEIVING FROM HIS DOCTOR.

THAT, THOUGH, I AM NOT A DORTOC, I AM NOTICING SIGNS
OF DETERIORATION IN NERVE AND MUSCLE CONTROL OF LEFT SIDE OF MY HEAD ,
NECK AND SHOULDER.   INCLUDING, BUT NOT LIMITED TO: MY LEFT EYE NOT
FULLY OPENNING, SHARP PAINS, LASTING FOR LONGER AND LONGER PERIODS,
FROM MY NECK, DOWN TO MY SHOULDER (LEFT) , INCREASED PERIODS OF
DIZZY SPELLS, AND HEADACHES.   MY LEFT LEG BOTHERS ME CONSTANTLY. I
SOME TIMES WALK WITH A LIMP AND AM CONSTANTLY WORRIED ABOUT MY HEALTH
AND THE EFFECTS THIS LACK OF TREATMENT WILL HAVE ON ME IN THE LONG
RUN - IF SOME KIND OF INTERVENTION IS NOT FORTHCOMING.

WHEREFORE, PLAINTIFF IS PLEADS WITH THIS HONORABLE
COURT TO GRANT HIM A HEARING AND THE RELIEF SOUGHT, PER RULE 65(a) OF
THE FEDERAL RULES OF CIVIL PROCEDURE.

HAYES V. NYS DIVISION OF PAROLE

PG. 7

CONCLUSION

WHEREFORE, PLAINTIFF PRAYS THAT THIS HONORABLE COURT GRANT
PLAINTIFF THE RELIEF HEREIN SOUGHT, WHICH IS THE RIGHT TO HAVE
THIS MATTER JUSTLY, FAIRLY AND HONESTLY ADJUDICATED,  AND FOR
SUCH OTHER AND FURTHER RELIEF AS THIS COURT MAY DEEM JUST , PROPER
AND EQUITABLE.

RESPECTFULLY SUBMITTED,

*Lawrence Hayes*

LAWRENCE HAYES
1410405885
DEFENDANT PRO SE
1600 HAZEN STREET

EAST ELMHURST, NY 11370

Sworn to before me this

28th day of MAy 2004.

NOTARY PUBLIC

MICHAEL SINCLAIR
Notary Public, State of New York
No. 01SI4953662
Qualified in Bronx County
Commission Expires Aug. 12, 20 05

EXHIBIT H-1

*Gideon Hedrych, M.D.*
*100 Livingston Street*
*Brooklyn, NY 11201*

April 28, 2004

To Whom It May Concern:

Mr. Lawrence Hayes was evaluated and treated by me on several occasions for injuries sustained in a motor-vehicle accident which occurred on 2/7/04. As a result, Mr. Hayes sustained injuries to his neck, back, left shoulder, and left knee. The injuries to his spine (including three herniated discs in the cervical spine) and to his left knee were quite severe and prevented him from returning to work and also disabled him from many of his activities of daily living. Due to these injuries, Mr. Hayes was also unable to attend several scheduled appointments at my office and, for the same reason, was unable to attend parole meetings, which were scheduled on 2/17/04 and on 3/2/04.

Please don't hesitate to contact me should any additional information be needed.

Sincerely,

Gideon Hedrych, M.D.
Trauma Specialist
Board Certified in
  Emergency Medicine

GH:rc
40428

EXHIBIT # 2

THOMAS GUCCIONE
*Attorney at Law*
16 COURT STREET, SUITE 1210
BROOKLYN, NEW YORK 11241

(718) 396-4184
FAX (718) 624-2763

April 12, 2004

To Whom It May Concern:

Please be advised that I am the attorney representing Lawrence Hayes, a passenger in the vehicle owned and operated by Babette Lemon, for the serious injuries he sustained in an automobile accident on February 7, 2004. Kindly direct all necessary correspondence to my attention at the address and phone number printed above.

Mr. Hayes was a back seat passenger on the driver's side of the car when the vehicle in which he was riding was struck on the driver's side rear door by a car that passed a steady red signal. He sustained serious injuries from this accident, including three herniated discs in his neck that have prevented him from returning to work from the date of the accident right up to the present time. A copy of the MRI report showing the serious neck injuries is attached. Mr. Hayes has been under the care of Park Avenue Trauma, a multi-care medical facility located at 100 Livingston Street, Brooklyn, New York 11201, from the date of the accident to the present. Also attached is a copy of his initial medical evaluation from that facility.

Because of these injuries, I have been informed by his doctors that Mr. Hayes is still totally disabled and unable to carry out his usual and customary daily activities right up to today. He has missed a number of scheduled appointments due to his inability to travel, and has only been able to leave his home to see his doctors for therapy, testing, and examinations.

If I can be of further assistance in any way, please call me.

Very truly yours,

*Thomas Guccione*

THOMAS GUCCIONE

EXHIBIT #3

GIDEON J. HEDRYCH, M.D.
Board Certified in Emergency Medicine
100 Livingston Street
Brooklyn, NY 11201

Date: 2/10/04

D/A: 2/7/04

Patient: HAYES, LAWRENCE

Age: 52      Sex: Male

## COMPREHENSIVE INITIAL EVALUATION

<u>History and Description of Incident</u>: The patient was a rear-seat passenger in a car involved in a collision with another vehicle. As a result, he struck his head, injured his left shoulder and left knee and, in the process, jolted his neck and back. He did not seek immediate medical attention. Since then, despite taking repeated hot baths with Epsom salts, repeated hot showers, and Tylenol and Motrin, the patient's symptoms have persisted and, as a result, he has come to my attention in consultation and for treatment.

<u>Current Chief Complaints</u>: As a result of the injuries sustained in the accident of 2/7/04, this right-hand-dominant male patient currently complains of:

1) daily temporo-occipital headaches, severe at times; bouts of positional vertigo; blurred vision of left eye.

2) cervical pain and stiffness, frequently severe, with occasional "locking," left greater than right, with shooting pains radiating to left shoulder blade and down left arm, with numbness of left shoulder blade region and numbness and weakness of entire left arm.

3) low back pain and stiffness every day, severe nearly daily, left side greater than right, radiating to left buttock and down entire left leg, with numbness and weakness of left leg. Sitting 20-30 minutes, standing 40-45 minutes, or walking 2-3 blocks causes preemptive low back pain and left lower extremity radicular symptoms.

4) left shoulder pain on range of motion and exertions.

5) left knee pain on ambulation.

6) increased anxiety and nervousness; recurrent nightmares and obtrusive thoughts regarding the accident.

<u>Review of Systems</u>: Unremarkable for additional GI, GU, respiratory, endocrine or cardiac system symptoms.

<u>Past Medical and Family History</u>: In approximately 1968, sustained laceration of left wrist, which was sutured and became infected, requiring I & D, and healed without sequelae. In approximately 1992, sustained spontaneous collapsed lung, for which was hospitalized for approximately one week with insertion of chest tube, and symptoms predominantly resolved. No other significant traumatic, medical, or surgical history.

<u>Allergies</u>: PENICILLIN.

2/10/04 Exam

-2-

Re: HAYES, LAWRENCE

Personal History:  Smoker (one pack of cigarettes per day); drinks alcohol occasionally; denies drug abuse.

## PHYSICAL EXAMINATION:

Habitus and gait:  Well-developed, well-nourished male ambulating with head and torso splinted with antalgic gait favoring left lower extremity, assuming supine position with marked difficulty.

Heel-walking: Not possible due to left lower extremity radicular pain.

Toe-walking: Not possible due to left lower extremity radicular pain and weakness.

Central Nervous System:  Alert and oriented times three.  Cranial nerves II-XII, cerebellar functions and plantar reflexes within normal limits.

Head:  PERRL, EOMI; TMs, fundi benign.

Cervicodorsal spine: Range of motion (degrees):  Pain on flexion greater than 25, extension greater than 5, lateral flexion to the right greater than 5-10 and to the left greater than 10, rotation to the right greater than 25-30 and to the left greater than 20-25.  Palpation/Tone: Moderate to marked right and nearly marked left paravertebral muscle, trapezius muscle, and suprascapular muscle spasm from C3 to T4 on the right and from C3 to T5-6 on the left.

Dorsolumbar spine: Range of motion (degrees):  Pain on flexion greater than 10-15, extension greater than 0, lateral flexion to the right greater than 5-10 and to the left greater than 5-10, rotation to the right greater than 10 and to the left greater than 5-10.  Palpation/Tone: Nearly marked right and marked left paravertebral muscle and infrascapular muscle spasm from T10 to S1, with tenderness over left paravertebral muscle and at left lumbosacral junction.

Straight-leg-raising:  Positive at 5 degrees on left.

Chest:  Atraumatic.

Heart:  Regular rate and rhythm.

Lungs:  Clear to auscultation.

Abdomen:  Atraumatic.

Left shoulder: Subacromial space tenderness, with pain on abduction greater than 90-95 degrees, on external rotation with minimal to moderate limitation, on internal rotation with moderate limitation, on forward flexion greater than 95 degrees, and on dorsiflexion with moderate to marked limitation.  Markedly positive impingement sign.

Left knee: Anterolateral and anteromedial joint line and medial patellar facet tenderness and

diffuse popliteal fossa tenderness, with pain on flexion greater than 85 degrees and on extension, with 0- to 5-degree extension deficit. Negative anterior drawer/posterior drawer/Lachman's/ varus/valgus. Marked pain on bilateral rotational stress. McMurray's not possible due to low back pain and markedly positive Lasegue's sign.

Neurologic: Sensory: Decreased sensation to light touch and pinprick over left C4/C5/C6 and over left L4/L5/S1 dermatomes. DTRs: Biceps: trace/+1 right, +1/+2 left. Triceps: +1/+2 right, trace/+1 left. Brachioradialis: +2/+3 right, +1/+2 left. Knee-jerk: +1/+2 bilaterally. Ankle-jerk: +1 right, +1/+2 left. Motor: Moderate to marked weakness of left hand grip, left wrist extensors, and left elbow flexors. Knees unreliable due to marked left knee pain on resisted movements. Moderate weakness of left ankle evertors. Moderate to marked weakness of left extensor hallucis longus muscle.

INITIAL DIAGNOSTIC IMPRESSIONS:

1. Blunt head trauma.
2. Cerebral concussion.
3. Post-concussion syndrome.
4. Cervicodorsal derangement with traumatic myofasciitis.
5. Cervical radiculopathy with probable myelopathy.
6. Lumbosacral derangement with traumatic myofasciitis.
7. Lumbar radiculopathy.
8. Left shoulder derangement with traumatic tendinitis.
9. Left knee derangement with probable torn meniscus.

These diagnoses are causally related to the injuries sustained on 2/7/04.

PLAN:

1. X-rays of the cervical, dorsal, and lumbosacral spine, left shoulder, and left knee.
2. Patient will probably require MRIs of the cervical and lumbosacral spine, left shoulder, and left knee and EMG/NCV studies of the upper and lower extremities, if symptoms persist.
3. Rehabilitation medicine consultation (Dr. Blonder) and neurology consultation (Dr. Geisse).
4. Prescriptions issued for Tylenol No. 3 (30/1) and Flexeril 10 mg (30/1).
5. Prescriptions issued for a cervical collar, a lumbar support, and a knee brace.
6. Follow-up appointment in two weeks.

Gideon J. Hedrych, M.D.

GH/ijre
40211



**EXCEL RADIOLOGY SERVICES, P.C.**
5005 JERICHO TURNPIKE, SUITE 204
COMMACK, NEW YORK 11725
631-864-3545

March 21, 2004

Re: Hayes, Lawrence
Date of Examination: 3/15/04
Date of Birth: 6/4/61
Referring Doctor: Dr. Hedrych

## MAGNETIC RESONANCE IMAGING OF THE CERVICAL SPINE

**PROCEDURE**

MRI of the cervical spine was performed with sagittal T1 and T2 weighted sequences, as well as axial gradient echo images through the cervical disc spaces.

**FINDINGS**

Review of the preliminary coronal scout image reveals a cervical scoliosis. Sagittal images demonstrate straightening of the normal cervical lordosis.

Vertebral height is normal. Vertebral marrow signal is generally normal, with the exception of Modic type II endplate changes at C5-6 and C6-7.

There is disc space narrowing at C5-6 and C6-7. The remainder of the cervical disc spaces maintain normal height. Anterior vertebral spurring is also noted in the cervical region.

At C2-3, there is left posterior vertebral and uncovertebral spurring, which flattens the left ventral thecal sac and narrows the left neural foramen.

At C3-4, there is central herniation of the disc into the ventral spinal canal, which obliterates the ventral subarachnoid space and deforms the ventral cord surface, without overt cord impingement.

At C4-5 and C5-6, there are bulging annuli, accompanied by posterior vertebral spurs. These disc/osteophyte complexes obliterate the ventral subarachnoid space and flatten the spinal cord, without definite overt impingement. Bilateral uncovertebral spurs narrow the neural foramina bilaterally at both levels.

At C6-7, there is central herniation of the disc, associated with posterior vertebral spur formation. This disc/osteophyte complex impinges upon and deforms the ventral cord surface. Bilateral uncovertebral spurs encroach upon the neural foramina bilaterally.

At C7-T1, there is right paracentral herniation of the disc, which focally deforms the ventral thecal sac, especially on the right side. Hypertrophic facet joints and ligaments flava efface the dorsolateral subarachnoid space and significantly narrow the neural foramina bilaterally at this level.

Re: Hayes, Lawrence
MRI C-spine
Page Two

There is acquired central spinal stenosis in the cervical region secondary to the aforementioned pathology, with anteroposterior canal dimensions spanning from approximately 8 mm at C3-4, to approximately 9-10 mm in the remainder of the cervical region. There is foraminal narrowing at every level, with the exception of C3-4, as noted above.

The spinal cord is intrinsically normal in appearance. The cerebellar tonsils are normal in position.

IMPRESSION
1. Left posterior vertebral/uncovertebral spurring at C2-3, which results in:
    a) mass effect on the left ventral thecal sac.
    b) left foraminal narrowing.
2. Central disc herniations at C3-4 and C6-7, associated with posterior vertebral spurring at the latter level.
3. Annular bulges and vertebral spurring at C4-5 and C5-6.
4. Mass effect on the thecal sac and spinal cord at every level from C3-4 and C6-7, with overt cord impingement at C6-7.
5. Right paracentral disc herniation at C7-T1.
6. Acquired central spinal stenosis, C2-3 through C7-T1, which deforms the ventral thecal sac.
7. Bilateral uncovertebral spurring, C4-5 through C6-7, with bilateral foraminal encroachment.
8. Bilateral facet and ligamentous hypertrophy at C7-T1, with bilateral foraminal narrowing.
9. Cervical scoliosis and loss of the normal cervical lordosis, likely related to muscle spasm/pain.

Thank you for the courtesy of this referral.

Respectfully submitted,

Michele Rubin, M.D.
CAQ and Board Certified Neuroradiologist

**PARK AVENUE TRAUMA ASSOCIATES**
100 Livingston Street
Brooklyn, New York 11201

April 28, 2004

Re: Lawrence Hayes

To Whom It May Concern:

Please be advised that I am an employee of Park Avenue Trauma, and was given instructions by Dr. Hedrych, the director, to fax a letter of disability to the parole bureau chief, Mr. Marks, and parole officer, W. Bush, on behalf of our patient, Lawrence Hayes, at the fax number provided. I personally worked the machine and sent these faxes as requested, and received the machine's confirmation that the faxes were sent. I do not recall the exact date, but this occurred in March of 2004.

Shirley

GIDEON HEDRYCH, M.D.
PARK AVENUE TRAUMA ASSOCIATES
100 LIVINGSTON STREET
BROOKLYN, NY 11201
(718) 625-9911

NAME _Lawrence_ _Hayes_____ DATE: 2 /19/04

TO WHOM IT MAY CONCERN:

The above-named patient is under my care for the following disabling condition(s):

1. Cervico - dorsal derangement
2. Lumbo - sacral derangement
3. Left shoulder derangement
4. Left Knee derangement
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____

The patient will be unable to return to work until further notice and will be re-evaluated
In a follow-up examination _2 weeks_ .

Should you have any questions regarding this matter, please do not hesitate to contact me

Sincerely,

_(signature)_

Gideon Hedrych, M.D.
Trauma Specialist, Board Certified in Emergency Medicine

GIDEON HEDRYCH, M.D.
PARK AVENUE TRAUMA ASSOCIATES
100 LIVINGSTON STREET
BROOKLYN, NY 11201
(718) 625-9911

NAME: _Lawerence   Hayes_   DATE: _2/26/04_

TO WHOM IT MAY CONCERN:

The above-named patient is under my care for the following disabling condition(s):

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____

The patient will be unable to return to work until further notice and will be re-evaluated
In a follow-up examination _____2 (weeks)_____.

Should you have any questions regarding this matter, please do not hesitate to contact me

Sincerely,

_Gideon Hedrych_
Gideon Hedrych, M.D.
Trauma Specialist, Board Certified in Emergency Medicine

## LAWRENCE HAYES
997 DeKalb Avenue #9-C
Brooklyn, New York 11208
(646) 645-6427
babbahayes2003@yahoo.com

### EDUCATION

**NEW YORK THEOLOGICAL STUDIES,** New York, New York
Master of Professional Studies, 1990
**BRONX COMMUNITY COLLEGE,** Bronx, New York
Paralegal Studies, 1989
**STATE UNIVERSITY OF NEW YORK REGENTS,** Albany, New York
Requirements Pending – 1988

### EXPERIENCE

**NEW YORK CITY COUNCIL 31st District, New York, New York**
*Community Liaison,* 2003 – 2004
Worked with community groups and individuals to resolve City government related problems and conflicts within the Far Rockaway community. Attended weekly meetings of Tenant and Civic groups to gives up-dates on relevant legislation. Contacted government agencies to advocate constituent complaints. Helped constituents develop program proposals and find funding sources.

**NO PEACE WITHOUT JUSTICE,** New York, New York
*Researcher/Strategy Consultant,* 1995 – 2001
Research and consensus survey development regarding international criminal justice issues and the death penalty. Preformed data collection and analysis for various issues of interest. Coordinate special events. Travel extensively for purposes of project promotion and advocacy. Maintain hard copy and data base files.

**INNOCENCE PROJECT,** New York, New York
*Research Assistant,* 2002 – Present
Open, examine and classify daily incoming correspondence. Create hard copy and computerized data files for daily correspondence. Respond to daily correspondence. Maintain extensive and detailed communications data base files.

**NEW YORK THEOLOGICAL SEMINARY,** New York, New York
*Teacher,* 1998 – 2000
Taught post-graduate certificate courses in World Religions and Contemporary Theology. Developed course outlines and contents. Taught research techniques and requirements. Graded daily reaction papers and mid-term and final exams.

### CERTIFICATES AND SKILLS

**WEST PUBLISHING COMPANY,** New York New York
- History of American Jurisprudence
- Legal Research and Writing
- Proficient in Word, WordPerfect, PowerPoint, Access and Amicus Attorney.
  **REFERENCE:**   Provided upon request.

**BIG MOUTH**

April 30, 2004

New York Parole Revocation Unit
Rikers Island
Elmhurst, NY

To Whom it May Concern:

We are independent filmmakers based in New York City. We are writing about
Lawrence Hayes. He is one of the main characters in our documentary film, *Deadline*,
which will be screened at several festivals and will be broadcast on NBC this summer.

Lawrence and his story are featured prominently in the film. He is incredibly unusual in
the way in which he found redemption in prison and is a wonderful speaker who inspires
everyone he converses with.

Recently, we flew him to The 2004 Sundance Film Festival in Park City, Utah this past
January and he and Former Illinois' Governor George Ryan spoke and inspired a large
audience. We want to include Lawrence is many upcoming events we are having. His
contribution to this film is truly immeasurable.

His accident was extremely physically traumatic for him and he is still recovering. We
hope that speaking this summer and fall about the film will allow him some additional
work while he heals in the way he needs to.

If you have any questions, feel free to give us a call. Thank you for your time.

Best,

Katy Chevigny
Co-Founder, Big Mouth Productions

Kirsten Johnson
Filmmaker

Dallas Brennan
Producer, Big Mouth Productions

Angela Tucker
Associate Producer

Big Mouth Productions, Inc. • 104 West 14th Street, 4th Floor • New York, New York 10011 USA
tel 646.230.6228 • fax 646.230.6388 • info@bigmouthproductions.com • www.bigmouthproductions.com

EXHIBIT #7

**STATE OF NEW YORK · EXECUTIVE DEPARTMENT · DIVISION OF PAROLE**

## VIOLATION OF RELEASE REPORT

Warrant Issued _____          No Warrant Issued _____

| | | | |
|---|---|---|---|
| Name: | HAYES, LAWRENCE | Date Released: | 09-18-91 |
| NYSID NO: | 3148935-L | Max. Expiration: | LIFE |
| Institution: | FISHKILL C.F. | Date of Warrant: | |
| DIN NO: | 72-H-0001 | Warrant No.: | |
| Date of Birth: | 06-04-51 | Date Enforced: | |
| Offense: | MURDER | Location: | |
| Sentence: | 20-0-0/LIFE | PVU No.: | |

Delinquency Date:          02-17-04

Since his/her release, the above named individual has violated the Conditions of Release in the following manner:

**CHARGE #1:**     LAWRENCE HAYES violated Rule #2 of the rules
governing parole, in that on 02-17-04 and thereafter,
subject failed to make his scheduled office report at
Brooklyn V Area Office located at 340 Livingston
Street, Brooklyn, NY, as instructed to do so by
P.O. Bush on 02-05-04.

FORM 4003-1 (6/82)

## STATE OF NEW YORK - EXECUTIVE DEPARTMENT - DIVISION OF PAROLE

Name:  **HAYES, LAWRENCE**      NYSID No: **3148835-L**      DIN No: **72-H-0001**

### Case Summary

LAWRENCE HAYES is a 52 year-old male who is currently serving a life sentence for Murder.  Subject was sentenced by Justice Bosch in Queens Supreme Court on 04-11-72.

### INSTANT OFFENSE:
On 08-20-71 at approximately 10:50 PM at a Luncheonette location within the vicinity of 207-22 Hollis Avenue, Queens, NY, the subject attempted to conduct a robbery with Cornelius Butler, Joseph Whitfield and Rudolph Graham.  At that time, a NYPD officer was fatally shot.

### CRIMINAL HISTORY:
The subject's criminal history dates back to 1969.  It includes arrest for possession of drugs, stolen property, grand larceny and unauthorized use of a motor vehicle.

### PRIOR PAROLE HISTORY:
Subject has two prior violations of parole supervision.  On 09-24-02, subject was declared delinquent and was thereafter revoked/restored to parole supervision.

### CURRENT VIOLATIVE BEHAVIOR:
On 02-17-04 and thereafter, subject failed to make scheduled office reports at the Brooklyn V Area Office located at 340 Livingston Street, Brooklyn, NY.  During scheduled office report day, P.O. Bush received no telephone calls or messages from the subject concerning his absence/inability to make his scheduled report.

### ADJUSTMENT TO PAROLE SUPERVISION:
Subject's adjustment to parole supervision can be characterized as marginal.  Subject has secured residency at 2525 Linden Blvd, Brooklyn, New York Apt. #5B.  Subject had held several job positions including one as a guest speaker for the "Campaign to End the Death Penalty."  More recently, subject was employed by the Tenant and Civic Association of Far Rockaway, Queens as a Community Liaison.  Employment was verified through pay stub and employment verification letter from employer.

On 02-05-04, subject was instructed to make his next scheduled office report on 02-17-04.  On that day and thereafter, subject failed to make any office reports.  On 02-29-04, P.O. Bush met subject at his residence where subject was instructed to make his next office report on 03-02-04.  On scheduled date and thereafter, subject failed to make any office reports and/or contact P.O. Bush/Brooklyn V Area Office.

### Present Status

| Time On Parole: | Years | 12 | Months | 4 | Days | 29 |
|---|---|---|---|---|---|---|
| Time Owed: | Years | LIFE | Months | | Days | |

On 03-11-04, SPO Cromer and P.O. Bush held a case conference, where subject was found in violation/delinquent of his parole supervision.  Warrant #373246 was issued by SPO Cromer.

_____          _____
Parole Officer          Date              Senior Parole Officer      Date
W. BUSH                                    R. CROMER

WB:ly
T:03-23-04

CODEFENDANTS:

| Name | DIN/Ind. No. | Sentence | Parole Status | Facility |
|------|-------------|----------|---------------|----------|
| Corneluis Butler | 72-H-0002 3268466-J | Murder 20-0/Life | 6/91 Bd. | Woodbourne C.F. |
| Joseph Whitfield | 72-B-0134 3367296-J | Manslaughter 1° 0-0/15-0 | Paroled - 4-23-75 | |
| Rudolph Graham | Deceased | | | |

---

### P R I O R   P A R O L E   H I S T O R Y

----→ none.

---

### P R E V I O U S   R E C O R D

| Arrested | Charges | Court | Disposition |
|----------|---------|-------|-------------|
| 12-13-69 | Grand Larceny, C.P.S.P., Unauth. Use M.V. PDD 6° | Kings Crim. | Dismissed |

\* continued.

The inmate has a juvenile history.

---

### P E N D I N G   L E G A L   A C T I O N S

None known.

\*  1/24/70   Robbery (Indict. #476/70)   Kings Criminal Ct.   Bench Warrant
             C.P.W. (Indict. 5219/70)                         Pending

**STATE OF NEW YORK**
**EXECUTIVE DEPARTMENT – DIVISION OF PAROLE**
**CERTIFICATE OF RELEASE TO PAROLE SUPERVISION**

72 H 04

SENTENCE:  INDETERMINATE  XX    DEFINITE

NYSID NO.  314 8535 L
72 H 0001

**Lawrence HAYES** , now confined in **Fishkill CF**  who was convicted of **Murder**

and sentenced in the county of **Queens** at a term of the **Supreme** Court, Judge **Beach** presi

on the **26th** day of **Nov.** , 19 **74** , for the term of **20-0/Life** the maximum term of which sente

expires on the XXXXXXXX day of **L I F E** XXX XX XXXXXXX XXXX has agreed to abide by the conditions to which (he) (s

has signed (his) (her) name here below, and is hereby granted ☐ Conditional Release/ ☑ Parole by the Board of Parole, by virtue of the author

conferred by New York State Law.

It is therefore directed that (he) (she) be released and placed under the legal jurisdiction of the Division of Parole until the XXXXX

day of **L I F E** xxxxxxxxxxxxxxxxxx

Signed this **6th** day of **August** , 19 **91** , at **Beacon**

Date of Release: **9/16/91**    Board of Parole:

Area Supvr. Alert

I, **Lawrence HAYES**  voluntarily accept Parole supervision. I fully understan
that my person, residence and property are subject to search and inspection. I understand that Parole supervision is defined by thes
Conditions of Release and all other conditions that may be imposed upon me by the Board or its representatives. I understand that my violatio
of these conditions may result in the revocation of my release.

**CONDITIONS OF RELEASE**

1. I will proceed directly to the area to which I have been released and, within twenty-four hours of my release, make my arrival repor
to that Office of the Division of Parole unless other instructions are designated on my release agreement.  PO MOORE @ Brooklyn II
at 340 Livingston St., Brooklyn  718-596-6060

2. I will make office and/or written reports as directed.

3. I will not leave the State of New York or any other State to which I am released or transferred, or any area defined in writing by m
Parole Officer without permission.

4. I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection
of my person, residence and property. I will discuss any proposed changes in my residence, employment or program status with my Parole
Officer. I understand that I have an immediate and continuing duty to notify my Parole Officer of any changes in my residence, employmen
or program status when circumstances beyond my control make prior discussion impossible.

5. I will reply promptly, fully and truthfully to any inquiry of or communication by my Parole Officer or other representative of the Division
of Parole.

6. I will notify my Parole Officer immediately any time I am in contact with or arrested by any law enforcement agency. I understand tha
I have a continuing duty to notify my Parole Officer of such contact or arrest.

7. I will not be in the company of or fraternize with any person I know to have a criminal record or whom I know to have been adjudicated
a Youthful Offender except for accidental encounters in public places, work, school or in any other instance with the permission of my Parole
Officer.

8. I will not behave in such manner as to violate the provisions of any law to which I am subject which provide for a penalty of
imprisonment, nor will my behavior threaten the safety or well-being of myself or others.

9. I will not own, possess, or purchase any shotgun, rifle or firearm of any type without the written permission of my Parole Officer. I
will not own, possess or purchase any deadly weapon as defined in the Penal Law or any dangerous knife, dirk, razor, stiletto, or imitation pistol
In addition, I will not own, possess or purchase any instrument readily capable of causing physical injury without a satisfactory explanation for
ownership, possession or purchase.

10. In the event that I leave the jurisdiction of the State of New York, I hereby waive my right to resist extradition to the State of New York
from any state in the Union and from any territory or country outside the United States. This waiver shall be in full force and effect until I am
discharged from Parole or Conditional Release. I fully understand that I have the right under the Constitution of the United States and under
law to oppose an effort to extradite me from another state and return me to New York, and I freely and knowingly waive this right as a condition
of my Parole or Conditional Release.

11. I will not use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization.

12. Special Conditions:
I will seek, obtain and maintain employment.
I will submit to periodic drug testing.

13. I will fully comply with the instructions of Parole Officer, and obey such special additional written conditions as he, a Member of the
Board of Parole or an authorized representative of the Division of Parole, may impose.

I hereby certify that I have read and that I understand the foregoing conditions of my release and that I have received a copy of this
Certificate of Release.

Signed this _____ day of _____ , 19 __

Releasee: _____  Witness: _____

3010 (10-79)

COPY TO PAROLE OFFICER

Form 9011 (REV. 9/89)

STATE OF NEW YORK
EXECUTIVE DEPARTMENT--DIVISION OF PAROLE
**NOTICE OF VIOLATION**

TO: Hayes, Lawrence

INST.#: 72-H-0001

WARRANT #: 373246

NYSID#: 3148835L

You are charged with violating the conditions of your release in the manner specified on the attached violation of release report. A preliminary hearing on these charges has been scheduled on ___Preliminary Hearing Waived___

Date     Time     Place

Should you waive a preliminary hearing or should probable cause be found at this hearing that you have violated the conditions of your release in any important respect, a final hearing on these charges will be held on ___April 19, 2004___ at ___9:30 am___

Date     Time

at ___Rikers Island Judical Center___

Place

In the event that your return to the State of New York cannot be effected for the hearing as scheduled above due to circumstances beyond our control, you will be afforded a preliminary and final hearing at such time as you may become available for return on our warrant.

You have the right to a preliminary and final violation hearing. A preliminary hearing may be held to determine whether there is probable cause to believe that you violated one or more of the conditions of your release in an important respect. At this hearing, you are entitled to appear and speak on your own behalf; introduce letters and documents and present witnesses who can give relevant information; confront and cross-examine adverse witnesses. Proof of your conviction of a crime committed after your release shall constitute probable cause for the purpose of the preliminary hearing. You may be represented by counsel. It is your responsibility to obtain counsel. Your waiver of this preliminary hearing is equivalent to a finding of probable cause.

In the event that you are convicted of either a misdemeanor or a felony committed while under parole supervision and a preliminary hearing has not been completed, you will not be entitled to the preliminary hearing on the basis of the new conviction. Any preliminary hearing which may have been scheduled may therefore be cancelled upon your sentencing for such misdemeanor or felony.

Following your waiver of the preliminary hearing or a finding of probable cause, the Board of Parole will examine your case and may order that you be held for a final violation hearing.

At the final violation hearing, the presiding officer will determine whether there is a preponderance of evidence to support each of the allegations: you have a right to be represented by counsel and to speak on your own behalf; you have the right to introduce letters and documents, present witnesses who can give relevant information, and confront adverse witnesses against you; you also have the right to present mitigating evidence relevant to your restoration to parole.

In the event that you are convicted of a felony committed while under parole supervision and you receive a new indeterminate sentence, any final hearing which has been scheduled for you may be cancelled. In such instances, the Board of Parole may issue a final declaration of delinquency based upon that conviction and sentence.

In the event that the Board of Parole issues a final declaration of delinquency, you will be served with a copy of that determination, together with a copy of the commitment.

Should you be convicted of a crime committed after your release, it is the intention of the Division of Parole to introduce evidence of your conviction at the time of your hearing.

It is your responsibility prior to either hearing to advise parole staff at the facility where you are detained of the names of all witnesses you wish to produce. Witnesses must have proper identification in order to be admitted to the facility.

A request to adjourn either scheduled hearing should be made in the case of a preliminary hearing, at least three days, and in the case of a final hearing, at least seven days prior to the hearing, in writing, to the local area office. Requests for adjournments made at the hearing will only be granted in exceptional cases.

Violation of Release Report received

___Lawrence Hayes___          ___4/7/04___
Signature                              Date

All persons charged with a violation of parole are required to be present at all proceedings regarding that violation of parole which are authorized by the Board of Parole. Any voluntary failure on your part to be present at any of these proceedings may result in a finding that your failure to appear was a voluntary, knowing and intelligent waiver of your right to appear. Should such a finding be made, a hearing in absentia can be held and a final determination be made regarding the charges pending against you, including, if necessary, a time assessment because of the violation of parole.

☐ I do wish to have          ☑ I do NOT wish to have
   a preliminary hearing.             a preliminary hearing.

___4/7/04___
Date                                    X ___Lawrence Hayes___
                                              Signature of Releasee
___4/7/04___
Date                                    ___Lisa Robson - PO___
                                              Signature of Witness

If you cannot afford an attorney and wish to have counsel at your preliminary hearing, sign and detach this form. It is your responsibility to mail the form to the address shown on the form. If you request assigned counsel at your preliminary hearing, you must mail this form **IMMEDIATELY.**

TO: _____          RE: _____
                                              Name

_____          WARRANT #: _____

I am an alleged parole violator being held at _____

_____

I am scheduled for a preliminary hearing to be held on _____ at _____ at _____
                                              Date     Time     Place

I have waived my preliminary hearing. A final hearing has been scheduled for _____
                                              Date
at _____ at _____
   Time     Place

I cannot afford an attorney and request that I be assigned counsel.

Releasee _____
                                              Name

EXHIBIT B

NEW YORK CITY DEPARTMENT OF CORRECTION
PAROLE VIOLATION UNIT
RESULTS OF PAROLE REVOCATION HEARING

HEARING DATE: 04/15/2004

NAME: HAYES, LAWRENCE

OUTSIDE DATE: 04/04/04

(2) ___X___ CASE ADJOURNED TO 5/5/04

SIGNATURE: _____   TITLE: _____   DATE: 4/19/04

EXHIBIT **C**

EXHIBIT D

STATE OF NEW YORK
EXECUTIVE DEPARTMENT
## DIVISION OF PAROLE

BRION D. TRAVIS
CHAIRMAN

97 CENTRAL AVENUE
ALBANY, NEW YORK 12206

JOSEPH J. GAWLOSKI
EXECUTIVE DIRECTOR

**MEMORANDUM**

TO: New York City Department of Corrections/ _____ County Jail

FROM: Parole Violation Unit, NYC/ _____ Area Office

RE: Results of Parole Revocation Hearing

373046

| 1. NAME: (Parolee)  LAST | FIRST | M. | 2. HEARING DATE: |
|---|---|---|---|
| Naiyes, Kaunnree | | | 5-12-04 |

| 3. NYSID #: | 4. BOOK & CASE #/LOCAL ID #: | 5. HEARING LOCATION: |
|---|---|---|
| 3148535L | 141 01 05885 | RVC |

6. TYPE OF HEARING / OUTCOME:

☐ **PRELIMINARY HEARING**   ☒ **FINAL HEARING**

☐ Probable Cause Found

☐ Probable Cause Not Found;
Warrant Lifted.

☐ Case Adjourned to _____

☐ Violation Sustained;
Hearing Completed.

☒ Case Adjourned to 6-16-04
postponed hearing

☐ Violation Not Sustained;
Charges Dismissed.
Warrant Lifted.

NOTICE TO ATTORNEY OF ADJOURNMENT DATE   ☒ Hand Delivered on 5-12-04
☐ Mailed on _____

NOTICE TO PAROLEE OF ADJOURNMENT DATE   ☒ Hand Delivered on 5-12-04
☐ Mailed on _____

| 7. SIGNATURE: | 8. TITLE: | 9. DATE: |
|---|---|---|
| White | PRS | 5-12-04 |

DISTRIBUTION:
**White Original:** NYC Dept. of Corrections (W/PV) / _____ County Jail
**Green Copy:** Bluebacker
**Canary Copy:** Attorney
**Pink Copy:** Parolee
**Gold Copy:** NYC DOC - Operations Division/Sheriff's Office

FORM 9015 (REV. 2/92)