original

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

LAWRENCE HAYES,                          SECOND AMENDANT
                                         C O M P L A I N T

             Plaintiff,
PAROLE OFFICER LISA BROWN and            Civil Action No.
PAROLE OFFICER DENISE GRANUM,            04-CV-2342

             Defendants.
-------------------------------------------------------X

RECEIVED
AUG 5 2005
PRO SE OFFICE

## I. C O M P L A I N T

1.   Plaintiff, Lawrence Hayes, pro se, for his complaint states the following.

2.   Plaintiff Lawrence Hayes, was arrested at his place of residents, by members of the New York State

Division of Parole Warrant Squard, on April 7th, 2004.

3.   Plaintiff, Lawrence Hyaes, is and at all times mentioned herein, an aduly citizen of the United States and a

resident of the State of New York.

4.   Defendant, LISA BROWN, was at all times herein employed as a Parole Officer at 340 Livingston Street,

Brooklyn, New York [Brooklyn V]. P.O. Lisa Brown is the partner of Parole Office Warren Bush, Plaintiff's parole

officer of record and the P.O. who sought and obtained the warrent for petitioner's arrest. P.O. Brown, was

present during petitioner's arrest on April 7th, 2004. Acting under color of Atate law, P.O. Brown violated

petitioner's Eighth Amendant rights by showing deliberate omdifference to petitioner's serious medical injuries

when (1) denying to seek medical assistance and advice for petitioner's medical conditions while removing

petitioner from his home and transporting him, (2) failing to obtain professional

when (1) denying to seek medical assistance and advice for petitioner's medical conditions while removing

petitioner from his home and transporting him, (2) failing to obtain professional advice as to whether

transporting petitioner would cause greater harm to his already serious medical injuries and, (3) taking

advantage of petitioner's condition of suffering and pain to exstract petitioner's signture, resulting in the weaver

his constitutionally protected right to a Preliminary Parole Revocation hearing.

5.      Defendant, DENICE GRANUM, was at all times employed as a Parole Officer, for the New York State

Division of Parole, at 340 Livingston Street Brooklyn New York (Brooklyn V]. P.O. Granum was present during

Petitioner's April 7th, 2004 arrest when petitioner informed all members of the warrant squard of his medical

status and condition. After removing petitioner from his home without professional memdical advice or

authorization - as peitioner was laying, in and out of consciousness, slouched and handcuffed behind his back,

in the back seat of their car, and after the decision to leave petitioner at the 75th Precinct - is was P.O. Denice

Granum who violated petitioner's Eighth Amendment rights and showed deliberate indiffernce to petitioner's

serious medical condition and needs, and ignored the advice of a 75th Precinct, NYC Police Officer, when

stating to the rest of the warrant squard members, "I am not taking him to a hospital. We can take him to

Ricker's Island or ..Where is Bush?" Thereby, consciously deciding to make it "convenient for P.O. Bush to

'serve' petitioner with parole violation papers, over seeking and obtaining medical treatment and advice for

petitioner's injuries and/or otherwise serious medical condition.

6.   This action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the deprivation,

under color of state law, of rights quaranteed by the Eighth and Fourteenth Amendant to the United States

Constitution.  This Court has jurisdiction over the action pursuant to 29 U.S.C. Section 1331.

7.   Petitioner's claims for injunctive relief are authorized by 26 U.S.C. Section 2283 and 2284 and Rule 65 of

the Federal Rules of Civil Procedure.

8.   This cause of action arose in the Eastern District of New York.  Therefore, venue is proper under 28 U.S.C.

Section 1391(b).

## PREVIOUS LAWSUITS BY PLAINTIFF

9.   Petitioner has filed no other lawsuits dealing wiht the same facts involved in this action or otherwise related

to his imprisonment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.   Previous to and during the April 7th, 2004 arrest, on numerous occasions petitioner brought his medical

condition and specific injuries to the attention of Parole authourities, to both petitioner's parole officer and to all

members of the Parole Warrant Squard who executed the April 7th, 2004 arrest.

11.   Petitioner reallegas and incorporate peragraphs 1 through 10 herein.

12.   At all relevant times, defendants were "persons" for purposes of 24 U.S.C. Section 1983 and acted under

color of State law to deprive plaintiff of his constitutional rights, as set forth more fully below.



# STATEMENT OF FACTS

13. Feburary 7, 2004 petitioner was involved in a car collision. As a result petitioner sustained injuries to his head, nect, left shoulder and left knee. On April 10, 2004 petitioner sought medical attention with Doctor, Gideon J. Hedrych, M.D., at Park Avenue Trauma Associate, 100 Livingston Street, Brooklyn, New York.* As a result of the car accident petitioner was examined and diagnosed with the following medical impressions:

    1. Blunt head trauma.
    2. Cerebral concussion.
    3. Post-concussion syndrome
    4. Cericodoral derangement with traumatic myofascitis.
    5. Cervical radiculopath with probable meyelopathy.
    6. Lumbosacral derangement with traumatic myofascitis.
    7. Lumbar radiculopathy.
    8. Left shoulder derangement with traumatic tendinitis.
    9. Left knee derangement with probable torn menicus.

14. Petitioner's treatment plan consisted of:

    1. X-rays of the cervical, dorsal, and lumbosacral spine, left shoulder, and left knee.
    2. Requirement of MRIs of cervical and lumbosacral spine, left shoulder, and left knee and EMG/NCV studies of the upper and lower extremities, if symptoms persist.
    3. Rehabilitation medicine consultation.
    4. Neurology Consultation.
    5. Medication: Tylenol No. 3 (30/10 and Flexeril 10 mg (30/1) .
    6. Cervical collar, lumbar support, and knee brace.

15. In the cource of treatment petitioner was schedule for several test over a three to four month period. In addition to testing and examinations scheduled by petitioner's own doctor, petitioner had to undergo testing and examinations by Insurance Companies petitioner's lawyer had filed accident claims against.**

21. Also, as a result of petitioner's injuries and treatment, petitioner was

---

*See, Petitioner's Exhibit #2 – COMPREHENSIVE INITIAL EVALUATION
**See, Petitioner's Exhibit #7 – LETTER, THOMAS GUCCIONE, ATTORNEY AT LAW



forced to go on disability from employment, at his doctor's ~~advise~~ direction [Exhibit # 3,

& 3(a)]. Petitioner was also forced to apply for disability insurance from his

employer [see, Petitioner's Exhibit "B" – LETTER, BERTHA LEWIS, ACORN].

16. On April 7, 2004, although petitioner made his parole officer, Warren

W. Bush, aware of petitioner's medical condition on at least three (3) previous

occassions, petitioner was arrested for failing to report between the dates

of Feburary 17, 2004 and thereafter. From the beginning of Petitioner's arrest

petitioner brought his medical conditions to the attention of parole authorities.

and each and every City and State Department of Correction's Facility he has

been transferred to.

 17. The Defendants in this matter have all created a clear pattern of refusing

to provide petitioner with any "concrete" medical treatment of his obviously

serious medical condition and specific injuries. Petitioner has requested that

he receive the proper and necessary (1) examinations by medical experts in

petitioner's specific required injuries; (2) testing [MRIs, EMG/NCVs, etc.];

and (3) rehabilitation medicine and/or therapy. The defendants have almost

completely ignorred or failed to take any genuine steps to provide petitioner

with treatment and as a result petitioner has and continues to suffer pain, fear,

and worry.

18. The refusal of the defendants to provide petitioner medical assistance and

threatment prevents both petitioner and this honorable Court from determining or

discovering what, if any, additional damage has occurred to petitioner as a result

of petitioner's prolonged period of being denied medical treatment. To allow

petitioner's medical problems to go untreated violates any civilized society's

standards of decency.

25. Petitioner CASE HISTORY of the facts in this case are as follows:



On April 7th, 2004 petitioner was awakened by a repeated banging on his Apartment door. Petitioner had experienced a great deal of pain the night before and had taken a strong pain releaving and sedative prescribed by his Doctor [see, EXHIBIT #2 –COMPREHENSIVE INITIAL EVALUATION p.3-Plan[4]]. Petitioner's common-law-wife, Ms. Annette Pittman openned the door and several members of the New York State Division of Parole enterred and making a great deal of noice stormed into the back bed room where I was located. Not knowing who they were I stepped behind the closet door when they entered, [I only remember doing so after being told by Ms. Pittman on a visit at Ricker's Island].* I was informed that I was being arrested on a parole warrant, for failure to report. I explained that I had experienced a car accident and wasn't able to report because of my disability. That I had explained said to P.O. Bush and had my Doctor's office fax him all the related information. I was handcuffed behind my back, taken down stairs and placed in the back seat of their car. As the car proceeded, I began to experience pain because (1) of the position I was in and (2) the fact that the sedative/medication was wearing off. I complained of the worsening condition, so much so, that the officer(s) offerred me an option (1) remain with them, while they went from house to house looking for other parole violators, or (2) be left at the 75th Precinct. Petitioner requested to be taken to the 75th Precinct [though, at the time, the name of the Precient was not mentioned]**

At the Precinct, the Parole Officer's gave the duty officer at the Precinct a cell-phone number where they could be reached and I was taken to a holding cell in the rear of the precinct. A short time after being placed in

* At the Final Hearing (7/21/04) PO. Brown testified that petitioner was hiding in the bedroom closet.
**In the original petition, petitioner stated it was the 79th Precinct, but later discovered it was the 75th Precinct that he was left at by Arresting Parole Officer on April 7, 2004

( 6 )

the holding cell, I began experiencing repeated sharp, pulsating pains in my neck, head and back. The pain was so great that I was compelled to yell out. I grabbed at my neck and squeeze my eye-leds tight to hold back the intensity, but to no avail. The police officer, I believe to be the duty officer, came back to inquire. I informed him of my medical condition and currect parole status or circumstances. The officer in question immediately contacted the parole authorities, told them of my condition and, further either instructed or recommended that they "come get me out of their precinct and take me to a hospital."

Shortly, after the call, the parole officers returned to the precinct, rehandcuffed me and took me out to their car. I was still in pain and it was obvious to see. Their was sweat on my forehead and my eyes were blood shot and watery. While sitting in the back seat of the car, I heard (I assume) the Supervising Parole Officer [a brown skinned, slim, about 5'7ft., female, in her mid to late forty's], while leaning over the hood of the second car, say, "I'm not taking him to a hopital, we can take him to Ricker's Island or ...where's Bush (referring to my assigned parole officer)." She was informed that he was Downtown. She, then, instructed parole officer Lisa Brown (P.O. W. Bush's partner) to contact him and tell him to meet them at the Brooklyn Criminal Court Builting, Downtown Brooklyn.*

*2* From the precinct I was taken to the Brooklyn Criminal Court Building. Throughout the trip from the precinct, I experienced dizzyness, was in and out of consciousness, sharp pains in my neck and back. It was during this time [and in this condition] that I was talked out of preserving my constitutional right to a Preliminary Parole Revocation Hearing.**Just how long we sat in the car, outside the Court building, waiting on P.O. Bush, I am not sure. I was awaken by P.O. Brown and lead into the building. From there I was taken to Ricker's Island.

---

*Respondents, at this point, were clearly aware of petitioner's medical condition. However, in the face of petitioner's serious physical injuries, respondants selected to "meet-up" with P.O. Bush, so that he could serve petitioner with the required paper work, rather than take petitioner to a medical facility where petitioner could obtain medical treatment and advice regarding possible damage from methods of travel.
**PO Brown took advantage of petitioner's condition. by weaving his right to a



Petitioner was under a doctor's supervision. Undergoing repeated test and disgnosis and treatment for the injuries he sustained during a car accident. When petitioner was falsely accused and then arrested, he made it a point to bring it to the attention of the Parole authorities involved in arresting petitioner. Once handcuffed behind his back and made to sit in the back seat of the arresting parole officer's car, petitioner began to experience repeated, sharp pulsating pain; in petitioner's neck, head and back. Petitioner was sweating and grunting from said pain. Petitioner has not been able to resume his medical treatment since that day. Petitioner believes it was a matter of duty for the parole authorities to take him to a hospital, to have my condition checked and obtain a professional medical opinion as to whether it was safe for petitioner to be moved around in the back seat of a car, handcuffed behind his back. Indeed, when the parole officer's realized they had some one in petitioner's condition in their custody, they should have called the City Emergency Medical Services, to take charge of the petitioner until such time that professional medical personnel made such a decision. It was apparent that the parole officer's involved had full knowledge of petitioner's medical condition, not just because petitioner brought these facts to their attention, but because of petitioner clear show of pain, suffering, and anxiety while being transported. Thus, petitioner was taken to and left at the 75th Police Precinct in Brooklyn, New York.

In addition, P.O. Brown in specific, took advantage of petitioner's medical condition and circumstance. While in route to meet up with P.O. Bush, P.O. Brown, knowing petitioner situation, sought to and caused petitioner to sign a waiver of this right to be granted a Preliminary Parole Hearing. That is, at first,



— 🔹 —

petitioner agreed to waive his preliminary hearing (petitioner was in pain and wanted on the get back to his treatment and life, as soon as possible. That was all that was on my mind). But, petitioner recalls, that another P.O., in the car, P.O. Mr. Brown, convinced me not to waive my preliminary hearing. The last thing I remember, before being over come by pain, was P.O. Mr. Brown, telling P.O. Ms. Brown, that 'I had changed my mind and wanted to have my preliminary hearing.' It was not until I was on Riker's Island, that I became conscious of the fact that P.O. Ms. Brown, did not change the paper to reflect that I wanted to have my constitutionally granted right to have a 14th Amendment Preliminary Hearing.

24. In general, all the defendants have purposely ignored the medical needs of petitioner, and particularly have demonstrated a deliberate indiferece to petitioner's serious medical injuiries and need for treatment. Petition still suffers from repeated neck, back, shoulder and knee pains. The defendants have prevented petitioner from knowing exactly what effects the lack of medical care and treatment have had upon him, by their actions and inactions.

## R E L I E F

25. COMPENSATORY DAMAGE: To be determined once counsel has been assigned and an assessment of disability insurance, workmen's compensation and other lost income or benefits can be made. However, the currect amount should be listed as $400,000.00

31. PUNITIVE DAMAGES: Petitioner seeks five million in punitive damages, for defendants calious and cruel indifference, and the physical, mental, emotional and spiritual pain, anxiety, and suffering petitioner has and continues to undergo because of the defendants actions and inactions, past and present and future.



Petitioner is seeking $100,000.00 (ONE HUNDARD THOUSAND) from each defendant, Individual and in their Official Capacity; for their cruel and insensitive disregard for petitioner's medical needs; and for the physical, emotional, psychological and spiritual pain and suffereing petitioner has experienced because of their actions and inactions.

**INJUNCTIVE RELIEF:** Petitioner is seeking the immediate resumption of Petitioner's medicial treatment (see, Petitioner's Exhibit #2 - COMPREHENSIVE INITIAL EVALUATION), under the direction and supervision of petitioner's doctor, Dr. Gedeon Hedrych, M.D., Park Avenue Trauma, 100 Livingston Street, Brooklyn. New York 11201. And that the cost of treatment be charged against the defendants.

1) Petitioner seeks an immediate injunction directing the defendants to implement policies, procedures, rules and regulations governing the treatment of parolee in medicial emergency situations. Such a policy must establish that no parole officer may assume the medical needs of a parolee under doctor supervision, must immediately contact Emergency Medical Services and must consult with and obtain written approval from either the doctor treating the patient/parolee or, in the alternative from the Registered Nurse-the NR acting under the directions of the doctor. The above should apply for all parole personnel, whether involved in executing an arrest warrent or otherwise.

2) Petitioner seeks injunctive directing the defendants to immediately implement policies, procedures, rules and regulations directing all parole personnel to cease questioning parolees with medical circumstances or under medication regarding whether the parolee wants to waive the constitutional right to a Parole Preliminary Hearing. Henceforth, under such circumstances, unless expressed by the parolee, the right to a preliminary hearing should be automatic.

3)    Petitioner is seeking injunctive relief, directing the New York State Division of Parole, to immediately implement policies, procedures, rules and regulations to maintain all business records [as defined in and in accordance with New York State Officers Public Law, §86, Art.6, FREEDOM OF INFORMATION ACT], generated by the Division, in the case, the daily report "sign-in-sheets," in hard and computerized loging methods.  The records in question should be certified, by the signature of both (1) the receptionist gathering the list, and (2) Bureau Chief of the regional office; certifying that the document is true, under the penalty of purjury.  The document should, at the conclusion of the specific days business, be date and time stamped.  The documents in question, with respect to both their existence and authentisity [as in the petitiotner's case] can mark the difference between a parolee's liberty and reincarceration. Therefore, in the interest of justice and United States Constitutional Safeguards, the injunctive relief herein sought should be taken to provide some form of protection against tampering.

4)    Petitioner is seeking injunctive releif, directing the New York State Division of Parole to immediately implement policies, procedures, rules and regulations governing the "certification" of all business records and documents to be submitted as "evidence" in revocation proceedings.  All such records or documents should include a sworn statement, under penalty of purjury, the signatures of (1) the parole officer bringing the charges, (2) the area Supervision, and (3) the Parole Specialist representing the Division in said procedeedings. In the "Quasi-judicial" atmosphere of revocation proceedings, the temptation to overlook established rules of evidence are sometimes irresistible [for lack of a better term].  The tremendous degree of immunity enjoyed by all parties involved, except the parolee, serves to only add to said irresistible temptation.  To knowingly violate such rules, could very well constitute a "waiver of immunity."

(11)

5) Petitioner seeks injunctive relief, directing the medical staff of all New York City Correctional Centers, Jails, or/and Facilities, who receive an inmate or prisoner under previous doctor supervision, to make contact with said doctor and consult with said doctor in the testing, evaluation and treatment of the inmate or prisoner's medical needs.

6) Petitioner seeks injunctive relied, directing the New State Division of Parole, to implement policies, procedures, rules and regulations directing all personnel to determine, in medical situations, whether the parolee's charged violation(s) are of a "technical nature," and in such cases, if the parolee does not represent a threat to the safely of himself or the community, the parolee should be given written charges and instructed to appear at a time, date and place for a preliminary or final hearing. Otherwise, the disruption of a parolee's medical needs and threatment represents an unnecessary and extremely costly experience for both the parolee and the City and State medical facility.

## C O N C L U S I O N

Petitioner, prays this Honorable Court will grant the relief herein sought, which is the right to have this matter justly, fairly and honestly adjudicated. And for such other and further relief this Honorable Court may deem just, proper and equitable.

Respectifully Submitted,

Lawrence Hayes (#72H0001)
Marcy Correctional Facility
P.O. Box 3600 - Marcy, NY 13403-3600

Sworn to before me this
18 day of August 2005

_____
NOTARY PUBLIC

(12)